## JOHNSON v. WILSON.

(District Court, N. D. Georgia. September 17, 1914.)

### No. 7.

BANKRUPTCY (§ 175*)—CONVEYANCE BY BANKRUPT TO WIFE—VALIDITY.

Evidence considered, and *held* to sustain the findings of a special master that at the time of the making of a deed to land by a bankrupt to his wife, nearly three years before his bankruptcy, he was solvent, and that the deed was not made to defraud creditors, but in good faith, in consideration of money advanced to him by his wife in former years, on the understanding that he should deed her land for the same, and was valid.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 247, 248; Dec. Dig. § 175.*]

In Equity. Suit by W. H. Johnson, trustee in bankruptcy of W. D. Wilson, against Amanda J. Wilson. On exceptions to report of special master. Overruled, and report confirmed.

H. H. Perry, of Gainesville, Ga., for creditors.

W. M. Johnson, J. G. Collins, and H. H. Perry, all of Gainesville, Ga., for trustee.

H. H. Dean and A. C. Wheeler, both of Gainesville, Ga., for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

NEWMAN, District Judge. This is a suit by the trustee in bankruptcy of W. D. Wilson to recover of Mrs. Amanda J. Wilson, the wife of the bankrupt, certain real estate in Hall county, Ga. The case was referred to W. B. Sloan, Esq., as special master, and his report, which will show the issues in the case and the finding of the special master on these issues, and his final conclusions in the matter, is as follows:

"On the 11th day of October, 1912, by agreement of all parties, the case was heard by me at Gainesville, Ga., and E. H. Cooley, the official stenographer of the Northwestern circuit, under order of the special master, reported the evidence in the case, which report of evidence as submitted by him, together with the documentary evidence therein designated and specified, is certified by me, and is hereby made a part of this report.

"On the 13th day of July, 1911, W. D. Wilson filed a voluntary petition in bankruptcy, and on that date was adjudged a bankrupt, according to law, and on the 15th day of August, 1911, W. H. Johnson, Esq., was elected trustee of the estate of W. D. Wilson, bankrupt, and qualified as trustee in said case, and took charge of the assets of said estate of said W. D. Wilson, bankrupt.

"On the 9th day of December, 1911, W. H. Johnson, trustee as aforesaid, filed his equitable complaint in this court against Amanda J. Wilson, alleging: (a) That W. D. Wilson was, at the date of his adjudication as a bankrupt, the owner and was in possession of parts of lots of land Nos. 36 and 37 in the eighth land district of Hall county, Ga., containing 175 acres, and known as the James W. Gould place. (b) That Amanda J. Wilson was claiming to own said land under a deed which purported to have been executed October 21, 1908, and recorded November 12, 1910. (c) That at the time said deed was executed W. D. Wilson was insolvent, and that said deed was made with intent to defraud creditors, was a voluntary conveyance, was not bona fide, nor for a valuable consideration, and that Amanda J. Wilson knew, or ought to have known, that the said W. D. Wilson was insolvent, that the making of said deed was in contemplation of the bankruptcy proceedings, and was a fraud upon the bankruptcy laws of the United States and upon the creditors of W. D. Wilson. (d) Said W. H. Johnson, trustee as aforesaid, prayed that said deed be canceled and set aside, and that the property described in said deed be decreed to be the property of the bankrupt in the hands of the trustee to be administered.

"On the 13th day of January, 1912, Amanda J. Wilson filed her answer to said equitable petition, as follows: (a) Defendant denied that W. D. Wilson was the owner of said land, or was in possession of said land, at the time he was adjudicated a bankrupt, but averred that she was the owner of said land in fee simple at that date and was in possession. (b) That she purchased said property from said W. D. Wilson on the 21st day of October, 1908, obtained a deed to same, and went into possession of said property by herself and tenants, and that she has been in the actual and adverse possession of the same since that date. (c) Defendant denied that said W. D. Wilson was insolvent at the time he executed the deed, denied that said deed was made with intent to defraud creditors, and denied that she has any reason to believe that W. D. Wilson was insolvent at the time the deed was made, or that the deed was made to defraud creditors. (d) Defendant denied that the deed was a voluntary conveyance, and denied that it was not for a valuable consideration, and denied that it was made in contemplation of bankruptcy proceedings, or was a fraud against the bankruptcy laws or a fraud against creditors of W. D. Wilson. (e) Defendant set up that the deed was executed in payment of a bona fide and valid debt that W. D. Wilson owed to the said Amanda J. Wilson for money advanced by her to the said W. D. Wilson, to amount of $1,600, besides interest. (f) That said W. D. Wilson had invested said money in lands under an agreement and promise to convey to defendant lands in payment of said money advanced, and that this deed was executed in pursuance of said agreement and was a bona fide transaction.

"Upon the issues raised by the pleadings in the case, the evidence justifies the following conclusions: (a) That W. D. Wilson was not the owner, and was not in possession, of the land described in the petition at the time he was adjudged a bankrupt. (b) That the deed from W. D. Wilson to Amanda J. Wilson, dated the 21st day of October, 1908, and recorded November 12, 1910, conveyed the title to the property therein described to the said Amanda J. Wilson. (c) That at the time said deed was executed W. D. Wilson was solvent, and owned sufficient property other than that described in the deed to have paid all his indebtedness, including his security debts. It was not without some difficulty that this conclusion was reached, owing to the conflict in the testimony and the various contentions. But when we consider the constant accumulation of interest, and the payment of loan commissions, some of which are rather excessive, I am forced to the conclusion that W. D. Wilson was solvent at the time the deed was executed, and that there was no evidence of any fraudulent intent, or that the deed was to hinder, delay, or defraud creditors. (d) That the deed was not a voluntary conveyance. (e) That the deed was made for a valuable consideration, and in payment of a valid debt due from the husband to the wife. The evidence does not disclose the exact amount of the indebtedness that was due from Wilson to his wife, but did show that considerable money had been turned over to Wilson by his wife, and that he had promised to convey land to her in payment of the money, and a preponderance of the evidence authorizes the conclusion that the deed in controversy was executed in compliance with said agreement between the said W. D. Wilson and his wife, Amanda J. Wilson, and was a valid deed.

"(f) Wherefore my conclusion, as special master, is that the deed in controversy was a valid deed, and conveyed the title to the property therein described to Amanda J. Wilson, and that the property described in the deed is not subject to be administered as the property of the bankrupt.

"As to the questions of law: Objections to the testimony of Palmour, found on pages 25, 26, 27, and 28 of the stenographer's report, were sustained by me, and the testimony ruled out, upon the grounds that it was a conversation between W. D. Wilson and a third person after Wilson had put his wife in possession of the land, and was not had in her presence. Objection was made to the testimony of R. Burnett, found on pages 18 and 19 of the stenographer's report, which objections were sustained by me, and the testimony ruled out, on the ground that it was a conversation between W. D. Wilson and a third person after he had gone out of possession of the land, and was not in the presence of his wife, and could not be introduced against her to affect her rights under a deed taken prior to that time. This view seems to be borne out by the holdings of the State Supreme Court. Bowden v. Achor, 95 Ga. 244, 22 S. E. 254; Marion v. Hoyt, 72 Ga. 117; James v. Kerby, 29 Ga. 684. This evidence of Palmour and Burnett was also inadmissible because these conversations appeared to have been conversations relative to another and different transaction, and were made long after the deed from W. D. Wilson to his wife had been executed and recorded. And it also appeared that these conversations related to a deed made to R. C. Green as security for a debt, and was a deed to other and different property. In any event, if the evidence thus ruled out should be considered, and given full weight, force, and credit, it would not authorize a different conclusion or afford any reason for canceling or setting aside the deed in question.

"I have carefully examined many authorities furnished me by the able and distinguished counsel for plaintiff, but fail to find anything that demands a different conclusion to the one rendered."

I have gone over the evidence in this case, and it seems to me sufficient to support the findings of the special master. If the testimony of Mr. and Mrs. Wilson is to be believed, there is no question about the correctness of the report of the master, and I see nothing whatever to cause the master or the court to disbelieve them, or either of them. Their characters are not attacked in any way in the record, and certain circumstances connected with the case can only be claimed

to impugn their testimony at the most. The difficulty in the case was, of course, that the debt by Wilson to his wife had been of such long standing as to make it a rather remarkable claim of indebtedness; still there seems to be no question at all that she inherited the money, as she claimed, or that she received the other $500, as she claimed, and turned it over to her husband, with the understanding that he was to make her a deed to some land for a "home place," as it is expressed.

The deed was made two years before Wilson went into bankruptcy, and, so far as this record shows, before he probably had any intention whatever of going into bankruptcy. The master found that Wilson was solvent in 1908, when he made the deed to his wife, and the evidence is sufficient, at least, in my opinion, to justify this finding. The testimony of all of the witnesses in the case was heard by the master, and he saw them and had an opportunity to judge them, and to judge and weigh their testimony, better than the court can from the record. I find no evidence whatever in the record to show that any creditor of W. D. Wilson was deceived into giving him credit by the nonrecord of the deed to Mrs. Wilson, so it is unnecessary to inquire how far this, if so, would affect Mrs. Wilson's rights.

There are some exceptions to the admissibility of testimony, but it is unnecessary to consider these, because the master finds that he would have reached the same result if he had admitted and considered the testimony which he excluded. The exceptions mainly make the two questions referred to above, as to Wilson's solvency at the time of the making of the deed to his wife, and as to the good faith and bona fide character of the transaction, and whether it was for a valuable consideration. The deed from Wilson to his wife could not have been made with intent to hinder, delay, or defraud creditors, if it was made in good faith, for the purpose of settling with her for the money Wilson received from her. The existence of a debt for a very long time might very well be recognized by a debtor, even by husband to wife, or particularly by husband to wife.

To state it again, the truth about the case is that, if it was, as Wilson and his wife stated, made in good faith, to pay her for the money she had advanced to him long ago, the transaction should be sustained. The master believed them about it, and I find no reason for differing with his finding.

The exceptions will all be overruled, and the report of the special master confirmed.